GLADNEY, Judge.
This suit and that of Foster & Creighton Company v. Melvin E. Parker and V. V. Parker, No. 11,086 on the docket of this court were consolidated for purposes of trial. This, an ex delicto action, stems from an accident which occurred on the night of April 16, 1965 in Shreveport. On that occasion a truck owned by Melvin E. Parker and driven by his son, V. V. Parker, and loaded with scrap iron struck certain falsework and beams then being utilized in the construction of an overpass on Interstate 1-20 over Hearne Avenue. The collision caused the beams and timbers to fall inflicting damage upon a tractor-trailer unit owned by Red Ball Motor Freight, Inc. which happened to be proceeding northbound under the overpass. In this suit Red Ball names as defendants Foster & Creighton and the two Parkers. In the companion suit, No. 11,086, 215 So.2d 350, Foster & Creighton Company claim damages from the Parkers, and Melvin E. Parker has reconvened for damages to the truck. Following trial judgment was rendered herein in favor of Red Ball and against Melvin Parker and V. V. Parker for $1,494.53. The demands against Foster & Creighton were denied. Red Ball has *348 appealed from the judgment insofar as it rejects its demands against Foster & Creighton Company. Melvin E. Parker has also appealed.
The plaintiff herein charges the defendant, Foster & Creighton Company, with negligence in not providing sufficient clearance to allow truck traffic to proceed safely under the overpass across Hearne Avenue and in failing to adequately warn drivers of approaching trucks of limited clearance. The Parkers are alleged to be negligent in that V. V. Parker failed to keep a proper lookout and be certain his truck could safely pass underneath the overpass. The defendants denied being at fault. Foster & Creighton contend that due to the excessive height of the Parkers’ loaded vehicle it struck supporting steel beams of the overpass and was responsible for the damage to Red Ball’s tractor-trailer. The Parkers assert the height of their truck loaded with scrap iron was no greater than 13 feet 3 inches and that the collision was due solely to the failure of Foster & Creighton to provide adequate clearance.
Hearne Avenue is a four-lane thoroughfare consisting of two southbound lanes and two northbound lanes. On the date of the accident the overpass was under construction and supporting frame work separated the northbound and southbound traffic lanes. A clearance of 13 feet 6 inches was supposed to be provided under the overpass and notice to this effect was given to traffic proceeding on Hearne Avenue. A special bell warning device was placed approximately 400 feet north of the overpass to warn vehicles with heights in excess of 13 feet 6 inches not to proceed beneath the overpass. This device was constructed with a number nine wire strung at a substantial height and stretched between two poles across the highway. An iron bar was suspended from this wire parallel to the roadbed. Attached to this bar were six spaced cowbells. Employees of Foster & Creighton testified that the iron bar was 13 feet 4 inches above the roadway with the bells hanging from the bar; that it was their custom to measure the height of the warning device every other day; and that its height had been measured on the afternoon of April IS, 1965 using for such purpose a previously measured stick, 13 feet 4 inches in length. A practice of measuring the clearance under the falsework and beams used in the construction was likewise followed, the same measuring stick being used as that used on the bell warning device in order to maintain a clearance of not less than 13 feet 6 inches.
For a period of two and a half months prior to the accident V. V. Parker had been transporting scrap iron from Hope, Arkansas to Houston, Texas. This scrap iron consisted of automobiles which had been mashed flat by the application of heavy weights. The driver had made an average of two trips a week and had passed under this overpass without difficulty. On this particular occasion his load consisted of two automobiles less than the usual load. The truck left Hope, Arkansas at approximately 8:30 P.M. and drove the 135 miles to Shreveport, arriving near midnight. As the truck went under the overpass the top of the load collided with the first two steel beams on the north side of the underpass, the impact of which caused the truck to veer to one side where it struck and dislodged some of the supporting framework. Plaintiff’s vehicle, proceeding in the opposite direction, came underneath the overpass about the same time. Some of the beams and timbers fell, striking that truck and causing the damage for which compensation is sought in this action.
The driver of the Parker truck knew of its presence and purpose when he passed under the warning device. He testified his truck did not disturb the warning device and Raymond Haight, who was riding on the truck, corroborated his testimony in this respect. Employees of Foster & Creighton Company testified that they inspected and measured the height of the warning device clearance at least every other day. The loaded truck was measur *349 ed for a maximum height of 13 feet 3 inches when it left Hope, Arkansas. The evidence indicates, however, that after striking the beams the top of the load buckled and flared upward thereby increasing the height of the load.
The question of liability primarily presents for resolution three issues of fact to be determined as of the time of the accident: The height of the Parker truck; the clearance afforded by the supporting structure at the overpass; and the clearance and functioning of the bell warning device.
Melvin E. Parker, Dave G. Ballard, Reba Deal, Robert Haight and Raymond Haight testified that prior to its departure from Hope, Arkansas, the height of the load measured 13 feet 3 inches at its highest point. The load, after the accident, was measured by Carl Johnson and Gene Gatti, both of whom testified that it was in excess of 13 feet 6 inches. Johnson testified its height was 14 feet in three different places. We attach little importance to this testimony forasmuch as the impact undoubtedly caused the load to buckle and alter the original height. Since the height of the clearance of the overpass was intended to afford a legal height of 13 feet 6 inches, obviously any vehicle of less height should have been able to pass safely without incident. Testimony was adduced to the effect that the height of the overpass was maintained at more that 13 feet 6 inches at the north entrance for the southbound traffic lane and was several inches higher at the south end due to the fall in elevation of the surface of Hearne Avenue.
On the afternoon of the accident the contractor was engaged in removing false-work which was supported by some 60 steel beams and, in order to accomplish this, the steel beams were lowered; the work of removing the falsework being finished about 3 o’clock P.M. To lower the beams it was necessary to remove 2X8 oak blocks and 3 inch wooden wedges used to maintain uniform height above the jacks and to restore the height to 13 feet 6 inches clear-anee, the 2X8 oak blocks and wedges had to be replaced. This particular work was under the supervision of John H. Holley, who directed a number of workers in replacing the wedges and 2X8 pieces, the presence of which raised the height 4 to 5 inches. When finished clearance was tested with the measured stick having a length of 13 feet 4 inches, the same stick used in measuring the bell warning system. Witnesses testified the resulting clearance was not less than 13 feet 6 inches.
The clearance of the bell warning device was measured by Carl Johnson and Otto Allen, who testified that the iron bar to which the bells were attached was 13 feet 4 inches above the street surface and that the bells hung several inches lower. The testimony is not controverted. It follows therefore that any vehicle proceeding under the bell device with a height in excess of 13 feet 4 inches could not avoid striking the iron bar parallel to the roadway and thus set in action the sounding of the cowbells. Raymond Haight and V. V. Parker both testified that they passed underneath the bells without contact. Carl Johnson and V. V. Parker testified that after the accident the warning device was undisturbed. True, Otto Allen testified that when he came to work the morning after the accident he found the iron bar torn down and the bells strung along the highway, but we are not impressed with this testimony because of the contradictory testimony of Carl Johnson, Allen’s superior.
We conclude, therefore, that since the bells were not sounded or disturbed by the Parker truck the latter was traveling at regulation height and could have passed underneath the overpass without incident unless the beams used in the falsework of the overpass did not accord proper clearance. Our finding requires we hold that the failure of Foster & Creighton Company to maintain a clearance of 13 feet 6 inches for traffic using the underpass was the sole and proximate cause of this accident and that Melvin E. and V. V. Parker were without fault.
*350 It is ordered that the judgment appealed be annulled and set aside. It is further ordered that there be judgment in favor of the plaintiff, Red Ball Motor Freight, Inc. and against the defendant, Foster & Creighton Company in the full sum of $1,494.53, with legal interest thereon from judicial demand until paid. It is further ordered that there be judgment in favor of Melvin E. Parker and V. V. Parker rejecting the demands of Red Ball Motor Freight, Inc.
Foster & Creighton Company is taxed with all cost of this suit.